**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy Wright DeWELLES, Defendant-
Appellant.**

**No. 14576.**

United States Court of Appeals
Seventh Circuit.

March 29, 1965.

Rehearing Denied May 7, 1965.

Palmer K. Ward, Indianapolis, Ind., for defendant-appellant.

Richard P. Stein, U. S. Atty., David Mernitz, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Roy Wright DeWelles, defendant, appeals from a judgment of conviction and sentence, on a verdict of a jury, based upon an indictment charging use of the United States mail in furtherance of a scheme and artifice to defraud, in violation of 18 U.S.C.A. § 1341.

1. He contends that the indictment was insufficient because it did not advise him of the crime with which he was charged.

Section 1341 provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

The indictment charged that defendant and Richard A. Broeringmeyer knowingly caused a postal card to be delivered by mail (to a named person at a designated address) according to the direction thereon, in violation of 18 U.S.C.A. § 1341.

■ Defendant states that the indictment fails to state that the postal card to be delivered by mail was ever placed in an authorized depository for mail matter to be sent or delivered by the Post Office Department.

Section 1341 states disjunctively three different acts, *inter alia*, which are prohibited, viz.: (1) the placing in any post-office or authorized depository for mail

matter, etc.; (2) the taking or receiving therefrom any mail matter; and (3) "knowingly causes to be delivered by mail according to the direction thereon."

Defendant is in error in his contention. The indictment is based upon knowingly causing to be delivered by mail, which is the third act prohibited by § 1341. It is not based upon the first act, as argued by defendant.

39 U.S.C.A. § 4251 includes as a definition of a postal card "a card supplied by the Department with a postage stamp printed or impressed on it for the transmission of messages, orders, notices and other communications, either printed or written in pencil or ink."

We hold that the indictment is not subject to the attack now made upon it by defendant.

2. It is argued by defendant that counsel who tried the case for him was not permitted sufficient time to prepare for trial.

The indictment was returned on March 19, 1963, and defendant was arrested. He appeared on April 25, 1963 with his own counsel, who obtained a continuance. On June 14, 1963, after the court had overruled a motion to dismiss the indictment, defendant entered a plea of not guilty. In the interim, he had consulted with his own counsel only once, on June 5, 1963, and, after arraignment on June 14, 1963, the case was again called on August 29, 1963, when it was set for trial on September 30, 1963. On October 9, 1963, the case was reset for trial on December 9, 1963. Defendant having failed to respond to his attorney's written inquiries and requests for payment of all or part of his fee, the latter withdrew on November 19, 1963. On November 20, 1963, the United States attorney suggested to defendant by mail that he obtain other counsel. On November 25, 1963, defendant contacted attorney Palmer K. Ward, who represented him at the trial and before this court. Mr. Ward made a motion for continuance on December 4, 1963, which was overruled, and, on December 6, 1963, another motion to dismiss the indictment was filed and overruled.

The trial commenced three days later and defendant's attorney cross-examined all government witnesses. He also moved to suppress certain evidence.

From a complete examination of the record we are convinced that the district court did not abuse its discretion in denying defendant's motion for a continuance.

3. During the course of the trial in the district court, Chief of Police Ezra Dagley of Shelbyville, Indiana, was testifying for the government, when defendant's attorney (to use his own words) "first realized that in fact the said Ezra Dagley did not have a warrant for the arrest of the defendant when such arrest was made." Defense counsel then moved for a mistrial on that ground, plus the fact that counsel had not objected to the introduction of many exhibits and oral testimony for the reason that he believed that a warrant for the arrest of defendant was in existence at the time of the arrest. However, Mr. Ward's cross-examination of Dagley brought out evidence which tended to establish that defendant told him that he (defendant) had a license to practice chiropractic, and that the witness observed a misdemeanor committed in his presence, in that there was a patient being treated and Mrs. Broeringmeyer said Mrs. DeWelles was treating a patient there.

There was evidence tending to prove the following additional facts:

Broeringmeyer's role was to be to contact "doctors" whose names were supplied by DeWelles, and to attempt to interest them in purchasing the DeWelles Detoxacolon instrument and in conducting colon therapy clinics.

In February 1962, physiotherapists Wayne Bull and B. R. Jackson had assisted Dr. Perry Odom, a licensed chiropractor, in establishing an office at Shelbyville, Bull and Jackson had leased an office for Odom in their own names in Shelbyville and were paying the rent.

In May, Bull agreed to arrange for a colon therapy clinic to be conducted by defendant in Dr. Odom's office. However, Broeringmeyer inspected that office and found it too small, so Bull and Jackson rented larger quarters in the Methodist Building and they bought from Broeringmeyer a DeWelles Detoxacolon unit.

Broeringmeyer met DeWelles at Mobile, Alabama, and they and their wives went to Shelbyville with the device and an X-ray machine. They installed the Detoxacolon in the office. They also had a local printer imprint on 10,000 postal cards, purchased at the Shelbyville post-office, an advertisement [1] of the clinic, and these, after having been addressed to rural route boxholders in the area, were mailed commencing May 31, 1962.

Chief Dagley saw DeWelles' automobile parked in front of the Methodist Building for several days after the latter arrived in Shelbyville. The chief asked him who he was and defendant replied he was Doctor DeWelles from California and was visiting Doctor Odom.

The clinic operations began on June 4, 1962. Several patients of defendants testified at the trial. Typical is Charles Whittaker who told defendant that his "ankles had been swelling up and ached mostly at night." According to Whittaker, thereupon defendant looked into his eyes, felt on his back and side, and then suggested a colon X ray, to which Whittaker agreed. The X ray was preceded by a barium enema; after the X ray Whittaker waited about one-half hour. DeWelles then brought in two X rays, one of which purported to show a normal colon. He then told Whittaker that his colon "was getting smaller at the outlet and it was causing the pressure to form on my nerves on the hips and legs, and that was what was causing my trouble." DeWelles then explained that to treat his colon, Whittaker should have a two-month course of treatment on an oxygen machine, which would cost $375, with a $25 discount if the entire amount were paid at once. Whittaker told DeWelles he couldn't afford that much, paid $10 for the X ray, and left.

Following a complaint to the county prosecutor on June 5, 1962 by Garl Trees, Dagley and other officers went to defendant's clinic offices and met Mrs. DeWelles and asked to see the doctor in charge. She asked Dagley to come into another room away from the patients. She led him to a room where there was a cot with an X-ray machine positioned over it, and also a desk with two X-ray negatives, a stethoscope, a coke bottle and a crescent wrench lying on it.

On this occasion defendant stated that Dr. Broeringmeyer was the person in charge. When Broeringmeyer was confronted, he stated that defendant was in charge. When Dagley asked for their chiropractic licenses, they were unable to produce any. He arrested both of them

[1]   "FREE TO YOU! Monday, June 4th, Thru        With
                      Saturday, June 9th.        This
                                                 Card.

A PHYSICAL EXAMINATION, usually costing $15 to $25. We will be assisted by one of our best known diagnostic specialists formerly of—CLINICAL RESEARCH INSTITUTE, Kansas City,—Examination Includes:

Ear, Nose and Throat                 Chest, Lungs, Stomach &
Liver                                        Colon
Heart and Circulatory Functions      Gland and Metabolism
Blood Pressure                       Bone and Joint Examination
                                     Prostate and Rectal

If you suffer from Asthma, Arthritis, High Blood Pressure, Epilepsy, Stomach Trouble, Kidney Trouble, Nervousness, Colitis, or any other disease, we know you will want to take advantage of this valuable offer, we suggest that you phone EX. 8-9992 for appointment. Examination Without charge only on the above dates.

Dr. Perry Odom, 307 Methodist Building—Phone EX. 8-9992

Chiropractor                                    Shelbyville, Indiana"

and seized some X-ray negatives and some records.

Defendant contends that he was illegally arrested by state authorities who had no warrant for his arrest and they caused a search of premises wherein defendant was, without a search warrant, and he was never tried by the state authorities upon the arrest they made and the federal authorities are barred from using the fruits of the illegal action of the state authorities.

▮ However, we hold that Chief Dagley, a police officer, was authorized under the law of indiana to make an arrest in this case for a misdemeanor committed in his presence. Lander v. State, 238 Ind. 680, 154 N.E.2d 507, 509 (1958). Chief Dagley observed events which indicated a violation of Burns' Ind.Stat. Ann. § 63–1336 (1961 Repl.) which provides:

> "63–1336. License required— Penalty for violation.—No person shall practice chiropractic or hold out as a chiropractor without a license to practice chiropractic in the state of Indiana.
>
> "Any person who violates any provision of this act [§§ 63–1326—63–1337] shall be guilty of a misdemeanor and shall be fined in a sum not to exceed five hundred dollars [$500], to which may be added imprisonment for any determined period not exceeding ninety [90] days. Each violation shall constitute a separate offense."

In Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963), Mr. Justice Clark pointed out that the evidence at issue in that case, to be admissible, was required to be the product of a search incident to a lawful arrest, since the officer had no search warrant. He also pointed out that the lawfulness of the arrest without a warrant, in turn, must be based upon probable cause,

> "* * * which exists 'where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' * * * "

In the case at bar, as we have pointed out, the facts known to Chief Dagley before and upon his entering the office or clinic of defendant clearly furnished grounds for a reasonable belief that defendant had committed the offense of practicing chiropractic and holding himself out as a chiropractor, without a license to practice chiropractic in that state. The information which the police officer had in this case is to be considered in establishing whether he had probable cause for the arrest and subsequent search of the office. We cannot say that at the time of the arrest or the search there were not sufficient grounds for a reasonable belief that defendant was committing the offense of practicing chiropractic without a license in the State of Indiana in the presence of the officer.

The result which we reach in this case is also supported by the fact that Chief Dagley had probable cause to believe that defendant, on the said premises, had violated the Indiana law making it a felony to obtain money by false pretenses.[2]

For these reasons, the judgment from which this appeal has been taken is affirmed.

Judgment affirmed.

---

2. At the date alleged in the indictment, Section 10–2103 Burns' Ind.Stat.Ann. (1956 Repl.) provided in pertinent part that:

"Whoever, with intent to defraud another, designedly, by * * * any false pretense * * * obtains from any person * * * any money * * * check, or thing of value * * * shall, on conviction, be imprisoned in the state prison * * *."