**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Willie L. DAVIS, Defendant-Appellant.**

**Nos. 78–2535, 79–1157 and 79–1207.**

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1979.

Decided Aug. 3, 1979.

Rehearing and Rehearing In Banc Denied Nov. 6, 1979.

Sarah Furey Crandall, Madison, Wis., for defendant-appellant.

Joan F. Kessler, U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before PELL, Circuit Judge, GEWIN, Senior Circuit Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The defendant-appellant, Willie L. Davis, was convicted of interference with commerce by extortion in violation of 18 U.S.C. § 1951, and armed robbery of a bank in violation of 18 U.S.C. § 2113, by a jury on October 17, 1978, and sentenced to a total of forty-five years imprisonment. In these consolidated appeals from the judgment of conviction, the denial of his motion for a new trial, and the dismissal of his section 2255 petition, he alleges a variety of errors all stemming, at least in part, from difficulties that developed between him and his several attorneys prior to trial. We affirm.

I.

On the evening of June 14, 1978, the family of Richard Ziebell was taken captive in their home by three armed intruders. The intruders demanded that Ziebell, the branch manager of the Great Midwest Savings and Loan, go to the bank and turn over all its money. He was told that if he failed to cooperate, his family would be injected with "enough heroin . . . to kill five horses . . . and they would die a terrible death." Several syringes and some brown powder were exhibited to Mr. Ziebell to impress upon him the seriousness of the threat. He complied with the intruders' demands.

The defendant was arrested on June 26 and appeared at a bail hearing with Attorney Crandall the following day. The defendant was found to be indigent and an attorney was appointed to represent him. The magistrate, however, declined to appoint Crandall despite her willingness to accept appointment. The defendant's appointed counsel was soon relieved of his duties apparently because the defendant's family retained another attorney—Mr. Alan Eisenberg—to handle the case. The record shows that the second attorney filed several motions on the defendant's behalf, but on September 8—just ten days before the day set for trial—the defendant became dissatisfied with Mr. Eisenberg's representation and requested that the trial court appoint new counsel. The defendant requested the appointment of Attorney Crandall, or barring that, one of several other Wisconsin attorneys.

* The Honorable Walter P. Gewin, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

Judge Reynolds held a hearing upon the defendant's written request on September 12.[1] The defendant there accused his attorney of incompetence. The attorney represented to the court that the defendant's allegations created a conflict of interest and requested that the court grant the request for new counsel. The government had no objection. The trial court granted the request, but declined to appoint any of the attorneys that the defendant had requested. Instead, the trial judge appointed Richard Reilly, an attorney who the judge regarded as one of the eminent criminal lawyers in the Milwaukee area.

The appointment of new counsel, however, did not cease the defendant's complaints about the quality of his legal representation. Less than two weeks after Mr. Reilly's appointment, the defendant requested that Judge Reynolds recuse himself and that Reilly be dismissed and Crandall be appointed as his attorney. Judge Reynolds honored the defendant's first request, and Judge Gordon, after the transfer of the case to his docket, honored, in part, the second. The defendant had complained of a personality conflict with his latest attorney, and, although Judge Gordon later remarked that he regarded the defendant's complaint as specious, on September 28 he accommodated him by dismissing Mr. Reilly and appointing yet another attorney. Judge Gordon, however, declined to appoint Crandall as the defendant had requested.

The new attorney, Mr. Perlson, did not learn of his appointment until October 3 and first interviewed his new client on the 6th. In the meantime, the defendant had mailed to the district court a motion to postpone his trial and sundry other motions as well as a renewal of his request for the appointment of Crandall as his attorney. In one of the communications he expressed his desire to represent himself if Crandall were not appointed. After his first meeting with Mr. Perlson, it took the defendant only four days to become dissatisfied once again with the quality of the legal representation on his behalf and to request the court to dismiss his latest attorney and replace him with Crandall. No other defense motion appears in the record until the day scheduled for trial.[2]

On the day of the trial, the defendant's attorney requested a continuance. The request was denied. The court then suggested that defense counsel might withdraw, leaving the defendant to handle his own case, and the attorney did so. The trial judge then adjourned the matter until that afternoon.

In the afternoon the matter of the defendant's legal representation was reexamined. It appeared that in the morning, the

---

1. Prior to oral argument, the government made a motion to supplement the record to include three additional documents: the letter from the defendant requesting new counsel, a letter allegedly written by the defendant which he attempted to smuggle out of jail, and a post-trial letter from one of the defendant's later attorneys to Judge Gordon. The first two documents were before the trial judge at the September 12 hearing and are referred to in the transcript of that hearing. The defendant has had an opportunity to respond to them and they apparently were not formally made part of the record before the district court by mistake. The government's motion to supplement the record with these two documents is therefore granted. Although the record reveals that the defendant was on notice that Mr. Perlson intended to write a letter to the court responding to the defendant's charges against him and the letter itself indicates that a copy was to be sent to the defendant, it is unclear whether the defendant did receive the letter and have an opportunity to respond. It is also not clear that the trial court relied on this communication in ruling on post-trial motions. Accordingly, as to this document, the government's motion is denied.

2. The defendant, however, did not confine himself during this period to filing motions in the district court. In addition to the numerous motions sent to Judge Gordon, he mailed a series of letters to this court which were received on October 5, 10, and 12. This court construed the letters as a petition for a writ of mandamus directing Judge Gordon to postpone the defendant's trial, and, so treating them, denied the petition in an unpublished order on the day of the trial. *Davis v. The Honorable Myron Gordon,* No. 78–2318 (7th Cir. Oct. 16, 1978). The defendant was informed of this court's action by Mr. Perlson the same day, prior to the colloquy that afternoon which is described within.

defendant handed a letter to Mr. Perlson and the U. S. Attorney. The defendant in his letter accused his latest attorney of incompetence and asked for a continuance. The court and the appointed attorney had apparently been unaware of the contents of the document that morning. In spite of the defendant's allegations, the appointed counsel stated that he was willing to represent the defendant or to assist in his self-representation, with the defendant's consent. The court then discussed the subject with the defendant. The defendant upon examination by the court made it clear that he did not want Mr. Perlson to continue to represent him and did not even want Mr. Perlson's aid in conducting his own defense. The colloquy on the record also establishes that the defendant understood that no continuance would be granted and no new counsel would be appointed:

DEFENDANT: . . . Mr. Perlson have withdrawn, and now you tell him to come back and be my side attorney to guide me into this trial. I don't want Mr. Perlson to be my attorney, and I want the record to show that.

COURT: All right. You understand that I will not appoint any other lawyer.

DEFENDANT: I understand that.

COURT: And that we are still going to go to trial today?

DEFENDANT: Right. I also would like for the record to show that I haven't got an attorney to represent me in this matter because I don't have any knowledge of the law or understanding of it in this case, 78–CR–74, and I, Willie Davis, as Defendant in this matter have no understanding about none of the proceedings that's going on here.

\* \* \* \* \* \*

COURT: . . .

If what you said is true, namely, that you are not legally trained, that's why I offer you the benefit of a lawyer's assistance. Now you are going to be free to try the case yourself if you want to, rather than have Mr. Perlson do it; although, it's not too late to ask him to proceed, if that's your wish.

But, in any event, it seems to me advisable that you accept Mr. Perlson's assistance, even though you are the trial—you are in charge of the trial. You'd have somebody to talk to, somebody to give you counsel and guidance.

Do you decline that?

DEFENDANT: I do.

COURT: All right. That's your privilege.

DEFENDANT: Are you going to give me enough time to appeal your decision?

COURT: No. We are proceeding to trial. Today is the trial date. I denied Mr. Perlson's application for adjournment. We are going to proceed to select the jury, and you are going to be obliged to conform to the requirements of the law, as to how the trial is conducted.

DEFENDANT: Your Honor, isn't it one of my rights to appeal your decision if you do not—

COURT: When the case is over, I believe that you have such right. You also have the right, as you already have known from Mr. Perlson's statement, to seek interim relief from the Court of Appeals, but that, according to Mr. Perlson, has been denied.

\* \* \* \* \* \*

Now I strongly urge you to accept the benefit of legal guidance, but if it's your wish not to have the assistance of an attorney, that's up to you.

I repeat: I can't appoint another lawyer for you. There have been two or three lawyers appointed already in your case. Mr. Perlson has at least had the benefit of several weeks preparation time; a new lawyer would not even have had that.

Now you have come to the end of the line as far as the court appointment of lawyers is concerned—at least in this court.

So, for the last time—at least I think it will be the last time—I will ask you now whether you want to accept some assistance from Mr. Perlson.

DEFENDANT: I decline.

The defendant having declined all assistance, the case proceeded to trial. The defendant also declined to participate in the trial, refusing either to cross-examine the government's witnesses or to present any defense. He was convicted by the jury on both counts the following day. He now raises on direct appeal several arguments which to some extent overlap with one another but which we shall attempt to examine separately. His major arguments are that:

1) the trial court arbitrarily declined to appoint counsel of his choice;

2) the trial court abused its discretion in denying a continuance on the morning of the trial; and

3) the record does not adequately support the trial court's finding that he waived his right to counsel.

In the other appeals, he maintains that the trial court abused its discretion in denying his post-trial motion for a new trial on the basis of newly discovered evidence and erred in dismissing his section 2255 motion for collateral relief.

## II.

Much of the controversy before this court finds its source in the defendant's insistence that Attorney Crandall be appointed as his counsel. Consequently, we examine first his argument that the trial court arbitrarily declined to appoint the attorney of his choice. The defendant concedes, as he must, that an indigent has no absolute right to counsel of his choice. *United States v. Hampton,* 457 F.2d 299, 301 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *United States v. White,* 451 F.2d 1225 (6th Cir. 1971) (per curiam). *See generally* Annot., 66 A.L.R.3d 996 (1975). Instead he proposes two standards either one of which, if adopted, would require the reversal of his conviction. First, the defendant suggests that ordinarily a defendant's request for a particular attorney should be honored unless the government can establish that the appointment would disrupt the orderly administration of justice. At oral argument, the defendant proposed a test honed more specifically to the facts of this case: when there is no public defender program and private attorneys are appointed at random, and if the defendant is already represented by an attorney in another criminal action, the defendant requests that the attorney be appointed, and the attorney manifests his willingness to accept an appointment, then the request should be honored absent some showing by the government why the attorney should not be appointed. The defendant stresses the importance to a defendant accused of a crime to have an attorney whom he trusts and respects.

We decline to adopt either of the standards proposed by the defendant. We believe the district court's policy not to honor a defendant's request for the appointment of a particular attorney in the circumstances of this case is rational and reasonably necessary to the orderly administration of the system of providing defense services to those financially unable to retain counsel on their own.

Permitting the defendant to select the lawyer he wishes to represent him is one method for increasing his confidence that he is being provided competent counsel and of providing as nearly as possible the same conditions for the professional relation that obtain when counsel is retained by a defendant of means. But these benefits may be achieved at the cost of serious disruption to the even-handed distribution of assignments. There is also the risk that the habitual offender, more sophisticated in the ways of the court and the identity of leading counsel, would be afforded an advantage in access to the more experienced criminal defense lawyers, who, having served, might not then be available to other defendants. Recognizing these drawbacks, a number of the plans which have been adopted by the federal courts pursuant to the Criminal Justice Act specifically preclude the defendant from making the choice of the lawyer who will represent him. See Plan for the District of Alaska; Plan for the Northern District of California; Plan for the District of Hawaii; and Plan for the

Court of Appeals for the Sixth Circuit; see also the New York City Plan. If the prohibition is not made absolute, procedures should be devised to avoid imposition on particular lawyers arising from the giving of consideration to the defendant's preference.

ABA Standards, Providing Defense Services § 2.3, comment b (Approved Draft, 1968).

The plan adopted by the Eastern District of Wisconsin under the Criminal Justice Act, 18 U.S.C. § 3006A, relies on a panel of private attorneys to satisfy the demand for court-appointed attorneys. The plan apparently contemplates that assignments shall generally be made on a rotational basis.[3] Although the plan does not expressly prohibit the defendant from selecting his appointed counsel, *compare United States v. Thompson,* 361 F.Supp. 879, 888 (D.D.C. 1973); *United States v. De Freitas,* 410 F.Supp. 241, 242 (D.N.J.1976), *aff'd without opinion,* 556 F.2d 569 (3d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977), Report on the Criminal Justice Act, 36 F.R.D. 281, 318, 324, 329, 343, 357 (1965), it is apparent that the judges and magistrates in the Eastern District of Wisconsin have adopted such a policy.[4] Such a limitation seems a necessary element of any system to rationally allocate assignments to represent defendants unable to afford retaining private counsel.

Given the district court's system of assigning counsel to represent defendants facing criminal charges, we do not believe the burden rests upon either the prosecution or the district court to justify the refusal to grant a defendant's request for the appointment of a specific attorney. The need for the rational assignment of counsel for criminal defendants is a systemic one, not amenable to particular justification in each individual case. Although we do not mean to suggest that it would be beyond the power of the trial court to honor a defendant's request for the appointment of a particular attorney,[5] we do hold that whether to entertain and act on such a request is a matter committed to the discretion of the judicial officer making the appointment. The Criminal Justice Act, 18 U.S.C. § 3006A(b), provides "the United States magistrate or the [district] court shall appoint counsel." We think this provision generally insulates this kind of choice of which attorney to appoint from appellate review. To the extent that this court will review the trial judge's or magistrate's decision, we will find "no abuse of . . . discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." *Drumgo v. Superior Court,* 8 Cal.3d 930, 935, 106 Cal.Rptr. 631, 634, 506 P.2d 1007, 1010, *cert. denied,* 414 U.S. 979, 94 S.Ct. 272, 38 L.Ed.2d 223 (1973). The defendant has suggested little more than personality conflicts and disagreements over trial strategy between himself and the attorneys appointed to represent him. We hold that the trial court did not abuse its discretion in appointing the attorneys that it did. There was no error in declining to appoint Attorney Crandall.

---

**3.** The legislative history of the Criminal Justice Act indicates that, although the Act does not require rotation of assignments when the panel system is used, Congress intended that assignments would usually be made on a rotational basis, subject to the trial court's discretion to make exceptions due to the nature of the case, an attorney's experience, and geographical considerations. *See generally* Note, *Adequate Representation for Defendants in Federal Criminal Cases: Appointment of Counsel Under the Criminal Justice Act of 1964,* 41 N.Y.U.L.Rev. 758, 775–83 (1966).

**4.** The defendant's letter requesting the discharge of Mr. Eisenberg and his replacement with court-appointed counsel indicates that the defendant was informed of and understood the district court's practice: "Magistrate McBride made it very clear that it is not the policy of this district to appoint counsel of your choice."

**5.** *See Drumgo v. Superior Court,* 8 Cal.3d 930, 935 n. 3, 106 Cal.Rptr. 631, 634, 506 P.2d 1007, 1010, *cert. denied,* 414 U.S. 979, 94 S.Ct. 272, 38 L.Ed.2d 223 (1973); *cf. Perrone v. United States,* 416 F.2d 464, 466 (2d Cir. 1969) (appointment of attorney not on district court plan's panel of attorneys is not reversible error).

### III.

■ The defendant's second argument is that the trial court erred in denying the motion for a continuance made by appointed counsel the morning of trial. The disposition of a motion for a continuance is a matter largely committed to the trial court's discretion. The trial judge is inevitably in a better position than an appellate court reviewing a cold record to determine the moving party's need and justification for additional time, the effect that a continuance may have on the opposing party, and the additional burden that rescheduling may have on the court's docket. Thus, ordinarily the refusal of the trial court to grant a continuance is virtually unreviewable. The Supreme Court has recognized, however, that an unjustifiable denial of a continuance could reduce the right to defend with the assistance of counsel to nothing more than an empty formality. *Ungar v. Sarafite,* 376 U.S. 575, 588–91, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Thus, the appellate courts will in some cases review a denial of a continuance for abuse of discretion.

Appellate review for what constitutes abusive or arbitrary action on the part of the district court is a fact-sensitive inquiry. "[I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar,* 376 U.S. at 589, 84 S.Ct. at 849. Reported decisions offer little guidance; each decision necessarily turns on the particular facts and circumstances of the case. *Id.; United States v. Rothman,* 567 F.2d 744, 748 (7th Cir. 1977); *Giacalone v. Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972). *See generally* Annot., 73 A.L.R.3d 725 (1976).[6]

Attorney Perlson argued before the trial court that a continuance was necessary because of the relatively short period of time he had had to prepare and the need "to confront the prosecution's witnesses, to investigate every semblance of proof which will help exonerate my client, to search out our witnesses for alibi and defense." He also noted the need to examine in greater detail the voluminous material voluntarily disclosed "by a generous and fair prosecution." He requested at least sixty days. The U. S. Attorney objected to a continuance, noted its earlier demand for notice of alibi had gone unanswered, and stated its readiness to go to trial. In fact, approximately thirty government witnesses were then under subpoena.

Viewing the record as a whole, we cannot say that the court abused its discretion. Although the length of time the newly appointed counsel had to prepare for trial, about two and one half weeks, was short, this and other courts have declined to upset convictions despite denials of continuances under similar circumstances. *See United States v. Long,* 419 F.2d 91 (5th Cir. 1969); *United States v. DeWelles,* 345 F.2d 387 (7th Cir.), *cert. denied,* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 77 (1965); *United States v. Yager,* 220 F.2d 795 (7th Cir.), *cert. denied,* 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285 (1955). Defense counsel was not completely unprepared; he admitted having broad access to the government's files and had been able to consult with the defendant three times. He requested a substantial period of time for preparation, but was rather vague about what avenue of defense necessitated so much time.

---

**6.** One court has listed the following as among the factors relevant to the decision of whether to grant a continuance in a related context: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived: . . . whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
*United States v. Burton,* 189 U.S.App.D.C. 327, 332–333, 584 F.2d 485, 490–91 (1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

More importantly, the trial court found that the defendant himself was responsible for the lack of preparation. As the district court remarked, the defendant systematically discharged his attorneys as the date of trial approached and had on one occasion succeeded in obtaining a continuance and assignment of his case to a new judge. Under the circumstances, the court could reasonably infer from the defendant's motion to discharge Mr. Perlson which the court had received prior to trial that the defendant was being uncooperative with his latest attorney. The trial court thus had good reason to suspect a dilatory purpose. *See Yeargain v. State,* 535 P.2d 693 (Okl.Cr. 1975).

■ The defendant's brief suggests that on the facts of this case that a continuance would not have disrupted the trial court's docket and therefore that the necessity for the orderly administration of justice should not weigh heavily in the balance of factors relevant to the review of the trial court's action. The defendant argues that only one and one half days had been set aside for his trial, that, although the trial was in fact completed within that time, it would not have been had he cross-examined witnesses and presented a defense, and that therefore there was no compelling reason to go to trial that day. We do not believe, however, that absent highly unusual circumstances not present here such nice considerations have any place before this court. Few, if any, people are better acquainted with the probable length of trials and the difficulty of rescheduling cases before the district court than the trial judge himself. The Speedy Trial Act requires that the district court bring criminal cases to trial with speed. We do not believe that the function of this court is to instruct the trial court not only how fast to try cases, but also in what order to try them. Even if we assume that the defendant's trial could not have been brought to an end within the time estimated by the trial court, the grant of the continuance would have left the court with an empty calendar for one and one half days which it may not have been able to fill on such short notice. Judge Gordon had already had to rearrange his calendar once to accommodate the defendant's trial within the limits set by the Speedy Trial Act, thus displacing other matters pending before the court. "The condition of most criminal dockets demands reasonably prompt disposition of cases; when cases are set far in advance for a day .certain, an unreasonable delay in one case only serves to delay other cases, and this carries the potential for prejudice to the rights of other defendants." *United States v. Burton,* 189 U.S.App.D.C. 327, 332, 584 F.2d 485, 490 (D.C.Cir. 1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). We hold that the judge did not abuse his discretion in declining to rearrange his calendar once again.[7]

### IV.

■ The defendant's third argument is that the trial court did not undertake an

---

7. We regard the defendant's argument that he was deprived of effective assistance of counsel prior to trial as subsumed in the issue of whether the trial court abused its discretion in denying the motion for a continuance. Moreover, given the defendant's decision to represent himself, it is doubtful that he can now raise this claim. *See Faretta v. California,* 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In any event, we do not believe the record establishes the defendant's claim. As discussed above, although Mr. Perlson told the court that he needed additional time to prepare for trial, he did discuss the case with the defendant three times, reviewed the extensive government file, and prepared a motion for the appointment of an investigator. Given the relatively short period of time he had to prepare, we do not believe these steps were inadequate.

The defendant complained that the attorney had suggested that he plead guilty. But, if the government's file revealed, as it presumably did, the strength of the government's case against the defendant, it may very well have been *ineffective representation not* to discuss the possibility of plea bargaining. The attorney's motion for a continuance also indicates that. Mr. Perlson was attempting to take steps to protect the defendant's rights. The attorney's withdrawal on the morning of trial, it is true, was unfortunate, but the attorney acted on the suggestion of the trial court and, almost immediately thereafter, expressed his complete willingness to resume representation of the defendant. Under these circumstances, we do not believe the defendant received ineffective representation prior to trial.

adequate inquiry to determine whether, and the record does not support its finding that, the defendant waived his right to counsel. It is well-settled that:

A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also North Carolina v. Butler*, —— U.S. ——, 99 S.Ct. 1755, 60 L.Ed.2d 286 (April 24, 1979). Even though we indulge in all reasonable presumptions against a defendant's waiver of his Sixth Amendment rights, *Day v. United States*, 357 F.2d 907, 909 (7th Cir. 1966), we believe the trial court's inquiry was sufficient under the circumstances of this case and that the record fairly supports the trial court's conclusion that the defendant waived his right to counsel.

Prior to the commencement of trial on the afternoon of October 16, the trial court asked the defendant how he wished to proceed. Earlier events had admittedly narrowed the alternatives available. The trial court made it clear earlier that morning that the case would proceed to trial forthwith. The trial court repeated to the defendant its resolve to proceed to trial and told him that an appeal would have to await the end of trial. The trial court also impressed upon the defendant that no new counsel would be appointed. The defendant responded that he appreciated that fact. We believe that the record, fairly read, shows that the trial judge offered the defendant three alternatives: (1) to proceed *pro se*, (2) to so proceed but with Mr. Perlson as standby counsel, or (3) to proceed with Mr. Perlson as his attorney.

Although the trial court had permitted Mr. Perlson to withdraw earlier that day,[8] the court invited him back and Mr. Perlson, in the defendant's presence, stated his willingness to proceed either as counsel with the defendant's consent or as standby counsel. The defendant's unambiguous response was to reject all offers of assistance: "I don't want Mr. Perlson to be my attorney, and I want the record to show that." The defendant repeated his resolve not to have Mr. Perlson represent him two more times. At the same time, the trial judge had before him the defendant's most recent written motion asking for Mr. Perlson's discharge.

We think that the record adequately establishes that the defendant made a knowing, intelligent choice to waive counsel—intelligent in the sense that it was made with knowledge and appreciation of his rights, his alternatives, and the possible consequences of choosing among them. The rec-

---

8. We do not believe under the circumstances that the trial court's permission letting Mr. Perlson withdraw prejudiced the defendant's rights. The court, of course, was well aware of the defendant's history of trouble with his attorneys. Earlier letters from the defendant had made obvious his insistence upon Attorney Crandall, and one of the defendant's motions received prior to the date of the trial requested Mr. Perlson's dismissal. Another had suggested that the defendant wished to represent himself. It is fair to assume that the trial judge surmised that discharge was imminent.

The trial court's action permitting Mr. Perlson's withdrawal seems to have been intended to protect another of the defendant's constitutional rights—the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This right, also guaranteed by statute, 28 U.S.C. § 1654, gener-

ally must be timely and unequivocally asserted and accompanied by a valid waiver of counsel. *See generally Faretta, supra*; *Chapman v. United States*, 553 F.2d 886 (5th Cir. 1977). We need not decide here whether the defendant unequivocally asserted this right or whether, if he did, his assertion of the right was timely. It is sufficient to note that had the trial court insisted on Mr. Perlson's continued representation of the defendant, the defendant might now have been complaining that the trial court abridged his right to represent himself.

In any event, we do not believe that the court's permission to appointed counsel to withdraw significantly affected the defendant's subsequent decision to proceed *pro se*. The defendant actively sought Mr. Perlson's removal from the case and, as we subsequently discuss, unequivocally rejected his assistance.

ord shows that the defendant is a high school graduate and has never been hospitalized or treated for mental illness or drug use. His repeated requests for new counsel establish that he knew that he had a right to court-appointed counsel and appreciated the importance of legal representation. His numerous letters and motions also show that, notwithstanding his disclaimer in open court to the contrary, he possessed a basic comprehension of the manner in which trials proceed and the way legal arguments are made. This apparently was not his first encounter with the criminal justice system. Additionally, Judge Gordon impressed upon the defendant the danger of proceeding *pro se*, informed him that he would be expected to conduct his defense in conformity with the rules of court, and advised him to accept Mr. Perlson's assistance. In light of the defendant's previous course of conduct with regard to his various attorneys, the trial court's inquiry was sufficient. The record adequately supports the court's determination that the defendant made his choice with his eyes open.

We also believe that the defendant's choice was made voluntarily. As we noted above, on the day of the trial his range of choice was narrowed. The trial court had rejected his requests for the appointment of Crandall as his attorney. The court had also denied his motions to postpone the trial. But the requirement that a waiver of counsel be voluntary

> does not mean that the decision must be entirely unconstrained. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive. *Cf. Illinois v. Allen*, 397 U.S. 742, 750–53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

*Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). The defendant had no right to have the court appoint him the attorney of his choice. The trial court acted within its discretion in declining to grant an additional continuance. The defendant's complaints about the quality of his legal representation were baseless. The limitations on the range of free choice presented to the defendant were constitutionally permissible and his choice within those limits was knowing and intelligent. We conclude, as did the trial court, that he abandoned his right to be represented by counsel at trial. *See Arnold v. United States*, 414 F.2d 1056, 1057–58 (9th Cir. 1969), *cert. denied*, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970).

## V.

The defendant's next argument is that the trial court abused its discretion in denying his motion for a new trial on the basis of newly discovered evidence. The affidavits accompanying the motion set out the impressions of an investigator after interviews with several individuals. Taken together the affidavits tend to make out an alibi defense.

The law with respect to motions for new trials based on newly discovered evidence is fairly well-settled. As the court noted in *United States v. Ellison*, 557 F.2d 128 (7th Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977):

> To warrant granting a motion for a new trial based on newly discovered evidence, it must be shown (1) that the evidence was discovered since the trial; (2) that the evidence could not have been discovered sooner with the exercise of due diligence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is so material that it probably would produce a different verdict. *United States v. Curran*, 465 F.2d 260, 264 (7th Cir. 1972).

*Id.* at 133 n.2. These standards reflect the fact that such motions "are not favored by the courts and are viewed with great caution." *United States v. Curran*, 465 F.2d 260, 262 (7th Cir. 1972) (quoting 2 C. Wright, Federal Practice and Procedure § 557 at 515 (1969)). The standard of appellate review seems equally well established: "The thrust of our inquiry is whether the board discretion, which the trial judge wisely has in this situation, has been abused." *Id.* at 262. Professor Wright has remarked that the appellant from a trial court's deni-

al of such a motion has a heavy burden indeed:

> The party who claims that the trial court erred in denying his motion for a new trial is not likely to be successful. The appellate court properly defers to the view of the trial court, and will affirm unless there has been error as a matter of law or a clear and manifest abuse of judicial discretion.

2 C. Wright, Federal Practice and Procedure § 559 at 541–42 (1969).

We regard it as extremely doubtful that this alibi evidence could be properly regarded as either newly discovered or unascertainable by due diligence. *See Cleary v. United States*, 163 F.2d 748 (9th Cir. 1947), *cert. denied*, 333 U.S. 864, 68 S.Ct. 736, 92 L.Ed. 1143 (1948). The time between the crime and the trial was not so long that memories would have faded or that the defendant would have been unable to reconstruct his whereabouts during the time that the government maintains he was planning and perpetrating the crime. Moreover, since three of the alibi witnesses are relatives of the defendant,[9] it is inconceivable that he would have been unable to contact them and get them to appear at his trial.

The trial court, however, chose not to base its denial of the motion on this ground. Instead, it held that after considering the materials supporting the defendant's motion, it was convinced that they would not produce a different verdict if a new trial were granted. We defer to the trial court's conclusion. In determining whether the new evidence would produce a different result, of course, the trial judge must consider not only the new evidence, but also the evidence that was introduced at trial. The evidence that the government presented to establish the defendant's guilt was direct as well as circumstantial. An accomplice identified him in court as a participant in the criminal venture. The defendant matched the description of the suspect given by the victims of the crime. His finger-print was found on one of the items which was found together with other objects tied to the commission of the crime. The gun and car used in the robbery were identified as belonging to the defendant's sister. Numerous other items of physical evidence corroborated the testimony of the defendant's accomplice and the government's theory of the case. We see no reason to disturb the trial court's conclusion that the new evidence—if it could truly be considered new—was insufficient to satisfy the requirement that it probably would produce a different result if a new trial were granted.

## VI.

■ The defendant's final argument is that the trial court erred in dismissing his motion made pursuant to 28 U.S.C. § 2255. The trial court held that since the defendant's direct appeal from the judgment of conviction was still pending and since no extraordinary circumstances were present, the motion under section 2255 was improper.

Ordinarily a section 2255 action is improper during the pendency of an appeal from the conviction. *Welsh v. United States*, 404 F.2d 333 (5th Cir. 1968); *Womack v. United States*, 129 U.S.App.D.C. 407, 395 F.2d 630 (1968); *Masters v. Eide*, 353 F.2d 517, 518 (8th Cir. 1965); *Black v. United States*, 269 F.2d 38, 41 (9th Cir. 1959), *cert. denied*, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357 (1960). As the Court of Appeals for the District of Columbia has held:

> there is no jurisdictional bar to the District Court's entertaining a Section 2255 motion during the pendency of a direct appeal but . . . the orderly administration of criminal law precludes considering such a motion absent extraordinary circumstances. A motion under Section 2255 is an extraordinary remedy and not a substitute for a direct appeal. Moreover, determination of the direct ap-

---

**9.** The defendant's nephew, niece, and sister were among the alleged alibi witnesses. In fact the defendant's sister appeared and offered to testify on the first day of the defendant's trial. The defendant declined the opportunity to call her.

peal may render collateral attack unnecessary.

*Womack,* 395 F.2d at 631.

The defendant while not disagreeing with this rule maintains that extraordinary circumstances warranted that the trial court entertain the motion in this case. Whether extraordinary circumstances exist is a question the answer to which depends upon the balancing of the need for speedy relief against the need for conservation of judicial resources. The determination is best left to the sound discretion of the trial judge. Judge Gordon determined that no extraordinary circumstances justified an exception to the general rule in this case. We are not disposed to disagree. Our affirmance, of course, does not preclude the defendant from renewing his motion for relief upon termination of these appeals.

## VII.

We do not deprecate the fundamental right to counsel by the repeated references to the need for the orderly administration of criminal justice in our decision here. The central importance of the assistance of counsel in protecting personal liberty and ensuring the fairness of criminal trials is unquestioned. Nevertheless, a defendant cannot be permitted to exercise his right to counsel in such a way as to manipulate the time and conduct of his trial. "The public has a strong interest in the prompt, effective and efficient administration of justice; the public's interest in ·the dispensation of justice that is not unreasonably delayed has great force." *United States v. Burton,* 189 U.S.App.D.C. 327, 331, 584 F.2d 485, 489 (1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

Our judicial system reposes in the trial judge the primary responsibility for balancing the interests of the defendant against those of the public when those interests conflict. *See* ABA Standards, The Function of the Trial Judge § 1.1 (Approved Draft, 1972). *See also Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). As an appellate court, we accord substantial weight to the balance that the

trial judge has struck. Although we cannot say that we would have proceeded in exactly the same manner that the trial court did here, we also cannot say that the court abused its discretion or abridged the defendant's rights. The judgment of conviction and the trial court's disposition of the post-trial motions are, accordingly,

AFFIRMED.