[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12125
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 11, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-60222-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERNANDO CASARAN-RIVAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 11, 2009)

Before MARCUS, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Hernando Casaran-Rivas appeals the denial of his motion to vacate, set aside, or reduce sentence, pursuant to 28 U.S.C. § 2255, and his conviction for illegal re-entry, in violation of 8 U.S.C. § 1326(a) and (b)(2).  Specifically, Casaran-Rivas first argues that the indictment (a) was insufficient for failing to allege that he had the specific intent to re-enter the United States for illegal purposes and (b) violated the United States's obligations under the 1951 United Nations Convention Relating to the Status of Refugees ("Refugee Convention") and United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT Treaty"), namely not to penalize him for illegal entry or presence in the United States because he arrived from a territory where his life or freedom was threatened and not to return him to a country where he might be tortured.  Casaran-Rivas also argues that his counsel was ineffective on several grounds, which was the issue raised in his § 2255 motion that he now appeals.  For the reasons set forth below, we affirm in part and vacate and remand in part.

## I. Background

Before trial, Casaran-Rivas submitted a motion to dismiss the indictment, on the ground that it violated the United States' obligations under the Refugee Convention and CAT Treaty.  The district court denied the motion, reasoning that

2

the Refugee Convention and CAT Treaty were not defenses to illegal re-entry.

At jury trial, Casaran-Rivas and the government stipulated that (1) Casaran-Rivas was a citizen of Colombia and alien to the United States, (2) Casaran-Rivas previously was removed from the United States, and (3) Casaran-Rivas traveled from Costa Rica to the United States without first obtaining permission from the Attorney General to reapply for admission. Casaran-Rivas testified in his own defense that he had no choice but to flee to the United States. He and his brother witnessed a "massacre" by guerillas. Two of the guerillas involved in the massacre were arrested, and the guerillas blamed Casaran-Rivas and his brother. The guerillas kidnaped his brother and father, and set fire to their house. Neither Casaran-Rivas nor any member of his family had heard from his brother or father since, and Casaran-Rivas had no doubt that they were dead. Thus, Casaran-Rivas traveled to Panama and requested asylum. However, some Colombians came to the place he was staying and shot at him. Casaran-Rivas then fled to Costa Rica and requested asylum. However, these same Colombians came to the docks where he was working. Scared, he boarded the only vessel that his company currently had docked, which was traveling to the United States. He only intended to seek temporary shelter in the United States while he arranged for asylum in another country, and stated as much to the immigration officer who interviewed him as

soon as the vessel landed.  The jury convicted Casaran-Rivas.

Before sentencing, Casaran-Rivas submitted a § 2255 motion, asserting that his counsel was ineffective on several grounds.  After denying the government's motion to dismiss the § 2255 motion as premature and without first holding an evidentiary hearing, the district court denied the motion on the merits.

The district court sentenced Casaran-Rivas to 78 months' imprisonment. Casaran-Rivas appealed his conviction, sentence, and denial of all pre-trial motions.

## II. Law and Analysis

### A. Motion to Dismiss Indictment

We review the district court's denial of a motion to dismiss an indictment for an abuse of discretion; however, questions of law are reviewed de novo.  United States v. McPhee, 336 F.3d 1269, 1271 (11th Cir. 2003).  Pursuant to § 1326, any alien who

> (1) has been denied admission, excluded, deported, or removed or has
> departed the United States while an order of exclusion, deportation, or
> removal is outstanding, and thereafter (2) enters, attempts to enter, or
> is at any time found in, the United States, unless (A) prior to his
> reembarkation at a place outside the United States or his application
> for admission from foreign contiguous territory, the Attorney General
> has expressly consented to such alien's reapplying for admission; or
> (B) with respect to an alien previously denied admission and removed,
> unless such alien shall establish that he was not required to obtain
> such advance consent under this chapter or any prior Act,

4

shall be fined or imprisoned. 8 U.S.C. § 1326(a). In <u>United States v. Henry</u>, 111

F.3d 111, 114 (11th Cir. 1997), we held that "specific intent is not an element of

the offense of illegal re-entry into the United States after deportation in violation of

[] § 1326."

The United States acceded to the Refugee Convention on November 6, 1968,

thereby binding itself to comply with Articles 2 through 34 of the Refugee

Convention. <u>Cuban American Bar Ass'n, Inc. v. Christopher</u>, 43 F.3d 1412, 1420

(11th Cir. 1995). Specifically, Article 32 prohibits expulsion of a "lawful" refugee

except on grounds of "national security or public order," and then only pursuant to

a decision reached in accordance with due process of law. <u>Haitian Refugee Center

v. Smith</u>, 676 F.2d 1023, 1029 (5th Cir. 1982). Article 33 prohibits deportation of

a refugee "to the frontiers or territories where his life or freedom would be

threatened on account of his race, religion, nationality, membership of a particular

social group or political opinion." <u>Id.</u> The CAT Treaty has been in effect in the

United States since November 20, 1994. <u>Cadet v. Bulger</u>, 377 F.3d 1173, 1179-80

(11th Cir. 2004). Article 3 of CAT provides, in relevant part, that "[n]o State Party

shall expel, return . . . or extradite a person to another State where there are

substantial grounds for believing that he would be in danger of being subjected to

torture." <u>Id.</u>

5

However, a "treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty." United States v. Thompson, 928 F.2d 1060, 1066 (11th Cir. 1991) (considering the Geneva Convention). A "self-executing international agreement is one that directly accords enforceable rights to persons without the benefit of Congressional implementation." Haitian Refugee Center, Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1991). We have held that the provisions of the Refugee Convention are not self-executing. Id. at 1110 (discussing Article 33). We also have held that the CAT Treaty is not self-executing. Cadet, 377 F.3d at 1180 n.3.[1]

The district court did not abuse its discretion in declining to dismiss the indictment for the reasons alleged. See McPhee, 336 F.3d at 1271. First, the indictment was not insufficient for failing to allege that Casaran-Rivas had specific intent to enter the United States as a previously deported criminal alien, as illegal re-entry under § 1326 is not a specific intent crime. See Henry, 111 F.3d at 114. Also, any argument that the indictment violated the refugee Convention and CAT

---

[1] Although Congress implemented the CAT Treaty through the Foreign Affairs Reform and Restructuring Act of 1988 ("FARRA"), Pub.L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822, codified as note to 8 U.S.C. § 1231, the provisions of FARRA generally apply to immigration courts and actually divest courts of jurisdiction to consider or review claims under the CAT "except as part of the review of a final order of removal under 8 U.S.C. § 1252" and strip this Court of jurisdiction to review removal orders of aliens who have been convicted of an aggravated felony. See Cadet, 377 F.3d at 1180, 1183 n.8; FARRA § 2242(d); 8 U.S.C. § 1252(a)(2)(C).

Treaty is without merit, as the Refuge Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms. See Baker, 949 F.2d at 1110; Cadet, 377 F.3d at 1180 n.3; Thompson, 928 F.2d at 1066. Accordingly, we affirm as to this issue.[2]

## B. § 2255 Motion

An ineffective-assistance-of-counsel claim is a mixed question of law and fact; we review the district court's findings of fact for clear error and decision on the ultimate issue de novo. Conklin v. Schofield, 366 F.3d 1191, 1201 (11th Cir. 2004). A defendant normally presents ineffective-assistance-of-counsel claims by way of a habeas motion or on direct appeal. As to ineffective-assistance-of-counsel claims presented in a habeas motion, § 2255 instructs that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[2] Casaran-Rivas also appears to argue on appeal that the immigration officer in question misled him to believe that his statements, regarding why he boarded the vessel, were for asylum purposes only, and would not be used to prosecute him. Any such action on the immigration officer's part was harmless, however, as Casaran-Rivas stipulated to the elements of the crime and as the other statements attributed to Casaran-Rivas actually supported his duress defense.

28 U.S.C. § 2255(a). Section 2255 also instructs that the prisoner must do so within one year of the latest of the date on which, inter alia, the judgment of conviction becomes final. 28 U.S.C. § 2255(f). A judgment of conviction generally becomes final when the opportunity for direct appeal has been exhausted. Akins v. United States, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).

Also as to the timing of a § 2255 motion, this and other Circuits have held that, absent extraordinary circumstances, a defendant may not seek collateral relief while his direct appeal is pending, as the outcome of the direct appeal may negate the need for habeas relief. United States v. Khoury, 901 F.2d 975, 976 (11th Cir. 1990); see also Kapral v. United States, 166 F.3d 565, 570 (3d Cir. 1999) ("[A] a collateral attack is generally inappropriate if the possibility of further direct review remains open"); Welsh v. United States, 404 F.2d 333 (5th Cir.1968) ("A motion to vacate sentence under 28 U.S.C. § 2255 will not be entertained during the pendency of a direct appeal, inasmuch as the disposition of the appeal may render the motion moot"); Capaldi v. Pontesso, 135 F.3d 1122, 1124 (6th Cir. 1998) ("[I]in the absence of extraordinary circumstances, a district court is precluded from considering a § 2255 application for relief during the pendency of the applicant's direct appeal"); United States v. Davis, 604 F.2d 474, 484 (7th Cir.1979) ("Ordinarily a [§] 2255 action is improper during the pendency of an

appeal from the conviction"); Masters v. Eide, 353 F.2d 517, 518 (8th Cir.1965) ("Ordinarily resort cannot be had to 28 U.S.C.A. § 2255 or habeas corpus while an appeal from conviction is pending"); Jack v. United States, 435 F.2d 317, 318 (9th Cir.1970) ( "Except under most unusual circumstances, not here present, no defendant in a federal criminal prosecution is entitled to have a direct appeal and a § 2255 proceeding considered simultaneously in an effort to overturn the conviction and sentence").

As to ineffective-assistance-of-counsel claims presented on direct appeal, the Supreme Court has held that appellate courts generally should not review ineffective-assistance-of-counsel claims on direct appeal. Massaro v. United States, 538 U.S. 500, 504-505, 123 S.Ct. 1690,1694 (2003). The Supreme Court reasoned that the record usually has not been sufficiently developed as to counsel's performance at that point in the proceedings. Id. The Supreme Court explained that the facts presented at trial would focus on the defendant's guilt or innocence and that, while the record "may reflect the action taken by counsel," it would not disclose the reason or strategic motive behind this action. Id. The Supreme Court concluded that the proper arena for such claims is collateral review. Id.

The district court erred in denying Casaran-Rivas's § 2255 motion on the merits, as it was premature. Section 2255's statutory construction demonstrates

9

that § 2255 was intended to afford strictly post-conviction relief. See 28 U.S.C. § 2255(a), (f). First, § 2255 allows "[a] prisoner in custody under sentence of a court" to challenge that sentence, such that the statutory language itself assumes that the movant already has been sentenced. See 28 U.S.C. § 2255(a). Also, § 2255, and the relevant case law, instruct that the time for filing a § 2255 motion begins to run after the direct appeal process is complete, such that the statutory language suggests that pursuit of habeas relief should follow pursuit of direct-appeal relief. See 28 U.S.C. § 2255(f); Akins, 204 F.3d at 1089 n.1; Washington, 243 F.3d at 1300; Clay, 537 U.S. at 532, 123 S.Ct. at 1079. Likewise, the reasoning cited by the courts who have held that collateral relief and direct-appeal relief cannot be pursued simultaneously, namely that the disposition of a direct appeal might render a habeas motion unnecessary, applies with equal force to pursuing habeas relief before direct-appeal relief. See, e.g., Khoury, 901 F.2d at 976. To this end, the record includes no reason to conclude that the instant case presents extraordinary circumstances that render this reasoning inapplicable. See id. Therefore, the district court should have dismissed Casaran-Rivas's § 2255 motion as premature.

The government suggests on appeal that we consider Casaran-Rivas's ineffective-assistance-of-counsel claims in a direct-appeal context. However, the

10

record before us is not sufficiently developed to do so.  See Massaro, 538 U.S. at 504-05, 123 S.Ct. at 1694.  The district court did not hold a hearing on the claims submitted, and the record otherwise does not indicate why Casaran-Rivas's counsel made the decisions at issue.  See 28 U.S.C. § 2255(b).  Accordingly, we vacate the order denying Casaran-Rivas's § 2255 motion on the merits and instruct the district to dismiss the motion as premature.  See Mohammed-Blaize, 133 Fed.Appx. 774; Massaro, 538 U.S. at 504-05, 123 S.Ct. at 1694.  Should Casaran-Rivas decide to pursue collateral relief, any § 2255 motion submitted would not be second or successive.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**